1

2

3

4

5    IN THE UNITED STATES DISTRICT COURT

6    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    TEKNOWLEDGE CORP.,                          No. C 08-3063 SI

9              Plaintiff,                        **ORDER GRANTING DEFENDANT'S**
        v.                                       **MOTION FOR SUMMARY JUDGMENT**
10                                               **OF INVALIDITY**

     CELLCO PARTNERSHIP dba VERIZON
11   WIRELESS,

12             Defendant.
     _____/

13

14         On May 15, 2009, the Court held a hearing on defendant's motion for summary judgment that

15   all asserted claims of the '175 patent are invalid. For the reasons set forth below, the Court GRANTS

16   defendant's motion.

17

18                                        **BACKGROUND**

19         Plaintiff Teknowledge Corporation alleges that defendant Cellco Partnership d/b/a/ Verizon

20   Wireless infringes U.S. Patent No. 6,029,175 ("the '175 patent"), titled "Automatic Retrieval of

21   Changed Files By A Network Software Agent." The '175 patent, in general, relates to methods and

22   systems for specifying interest in objects on a distributed network such as the Internet. More

23   specifically, some of the claims of the '175 patent relate to alerts technology for automatically providing

24   notification of updates or modifications to web pages or other web content. Plaintiff claims that

25   defendant provides such alerts products and/or services, and alleges that defendant has infringed at least

26   claims 1, 46, 53, 55 and 64 by developing, providing, marketing, and/or selling such alerts products

27   and/or services. Defendant denies infringement, and also contends that the asserted claims are invalid

28   and/or unenforceable.

United States District Court
For the Northern District of California

The '175 patent involves two technologies for accessing objects, such as web pages, over a distributed network. One technology, which is not at issue in this case, involves content delivery networks, which according to plaintiff "enable more efficient use of network bandwidth by distributing copies of web content to servers at various geographic locations." Opposition at 2:3-5.[1] The other technology involves automatically providing notifications of updates or modifications to objects, such as web pages. For example, a user may specify that it is interested in monitoring a particular web site for changes in particular content. The '175 patent provides a mechanism for registering the user's interest in the object, to monitor the object, and then notify the user when that object has changed.

The asserted claims involve the "notification" technology. Claims 1, 46 and 64 recite notification upon the occurrence of "changes" in "objects of interest." Claims 53 and 55 are more specific and require a "time-value" that "exceeds a threshold" before sending notifications to the user. Claim 1, for example, provides:

> 1. In a distributed computing system having a network of computers linked for accessing objects distributed among said computers, some of said computers executing object access software enabling interested parties to request access to said objects for display of accessed ones of said objects, a computer-implemented method of operating at least one of said computers for automatically notifying said interested parties when objects of interest are changed, said computer-implemented method comprising the steps of:
>
> a) accepting from said interested parties specifications of the objects of interest;
>
> b) maintaining in memory a list of the interested parties interested in each of the objects of interest;
>
> c) detecting occurrence of changes in the objects of interest, and in response to detecting the occurrence of a change in an object of interest, determining whether an update notification would then be desirable for each interested party in the list of interested parties interested in the object of interest in which the occurrence of change is detected; and
>
> (d) upon determining that an update notification would then be desirable for one of the interested parties in response to detecting the occurrence of change in one of said objects of interest, notifying said one of the interested parties of the occurrence of change in said one of said objects of interest for display of said one of said objects of interest.

---

[1]   Plaintiff previously asserted claims of the '175 patent against Akamai, Microsoft, Yahoo/Inktomi, and AOL/Netscape in this Court (Case Nos. 02-5741 SI and 03-3321 SI). On summary judgment, the Court held claim 29 to be invalid and claims 11 and 29 to not be infringed. *Teknowledge Corp. v. Akamai Tech., Inc.*, 2004 WL 2042864 (N.D. Cal. Sept. 11, 2004). That order is not relevant to the issues before the Court. The case settled prior to issuance of a claim construction order.

United States District Court
For the Northern District of California

'175 patent at 41:52-42:11 (Addiego Decl. Ex. J).[2]

Defendant has moved for summary judgment, contending that all asserted claims are invalid based on anticipation and/or obviousness. Defendant contends that claims 1, 46 and 64 were anticipated by U.S. Patent No. 4,554,428 (Toy), which patented a service that monitors stock prices and sends updates to users of the service based on certain criteria. Defendant contends that claims 53 and 55 were anticipated by U.S. Patent No. 5,471,629 (Risch), which disclosed a system for monitoring an object based on time. Defendant also contends that the '175 patent is obvious in light of Toy, Risch, and press clipping services dating back to the 1800s.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c.

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non- moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

---

[2] Claim 46 is largely identical to claim 1. The only apparent difference between claims 1 and 46 is that claim 46 recites a "change of significance" before notification in elements c and d. Claim 64 is very similar to claims 1 and 46, but it introduces a concept of a "condition of interest" as a replacement for the "change of significance" in claim 46.

**United States District Court**
For the Northern District of California

1  summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

2  Because a patent is presumed valid, invalidity must be established by clear and convincing evidence.

3  *See Takeda Chem. Indus., Ltd. v. Alphapharm Pty.*, Ltd., 492 F.3d 1350, 1355 (Fed. Cir. 2007); *Oakley,*

4  *Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

6  **DISCUSSION**

7  **I.     Anticipation**

8  "A patent is invalid for anticipation if a single prior art reference discloses each and every

9  limitation of the claimed invention."  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377

10  (Fed. Cir. 2003).  "In order to render a claimed apparatus or method obvious, the prior art must enable

11  one skilled in the art to make and use the apparatus or method."  *Beckman Instruments, Inc. v. LKB*

12  *Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

14  **A.     Toy**

15  Defendant contends that Claims 1, 46 and 64 of the '175 patent were anticipated by the Toy

16  patent.  Toy's title is "Information Monitoring and Notification Method And Apparatus."  Addiego

17  Decl. Ex. G.  The Toy patent was printed in 1985, and therefore constitutes prior art under 35 U.S.C.

18  § 102(b) because it is a "publication" "printed" more than 1 year before the 1995 filing date of the

19  provisional application leading to the '175 patent.  The Toy patent was not considered by the PTO

20  during the prosecution of the '175 patent.

21  In the preferred embodiment, Toy permitted users to enter lists of stocks or other securities for

22  the system to monitor.  Toy also permitted the user to enter certain conditions for those stocks which,

23  if satisfied, would trigger a notice to the user of the change in the stock.  Defendant contends that the

24  near identical overlap between Toy and the '175 patent is demonstrated by comparing Claim 1 of the

25  '175 patent with Claim 22 of the Toy patent.  Claim 22 of the Toy patent states:

26  22.  A method of data monitoring and notification comprising the steps of:

27  receiving input data pertaining to classes of events of interest;

28  storing descriptions of relevant subclasses of said input data which are of special

4

United States District Court

For the Northern District of California

interest;

processing said received data and deriving said subclasses of relevant data therefrom;

storing a set of specified conditions including specified threshold values;

comparing said threshold values and said received and processed data to determine when said threshold values have been met; and

initiating a contact sequence when said comparison establishes that said threshold values have been met, said contact sequence for remotely contacting a user via telecommunications networks and thereafter transmitting desired data to said user pertaining to said received and processed data.

Toy patent at 13:19-37.

Defendant served an interrogatory asking plaintiff to identify each claim element of claim 1 missing from the Toy reference:

**INTERROGATORY NO. 1:** Using the Claim Construction for the Toy patent (U.S. Patent No. 4,554,418) listed in Appendix C to Microsoft Corporation's Preliminary Invalidity Contentions (Attachment A), please identify each element of claim 1 of the '175 patent that you assert is not disclosed by the Toy patent.

**RESPONSE:** The '418 patent to Toy does not disclose detecting changes in objects. Instead, the reference discloses the use of filters to distribute a data stream. Because the '418 patent does not disclose objects of interest and each limitation of claim 1 recites objects of interest, the '418 patent does not disclose any of the limitations of claim 1.

Addiego Decl. Ex. F at 4. Thus, according to plaintiff's interrogatory response, the only element missing from Toy is the "object of interest." Similarly, plaintiff's opposition to defendant's motion for summary judgment only addresses the "object of interest" element found in claims 1, 46, and 64, and thus plaintiff has essentially conceded that Toy teaches every other limitation found in these claims.[3]

---

[3]  The Court holds that Toy does teach the other elements of claims 1, 46 and 64. Without holding that the preamble to claims 1, 46 and 64 is limiting, the Court finds that Toy discloses any of the possible preamble elements. The preamble recites "a network of computers linked for accessing objects distributed among said computers" so as to "automatically notify[] interested parties when objects of interest change." Toy's figure 1 teaches "the user may utilize telephone line 271 to connect a []home computer to the data processing system 260" (6:61-63) which receives input from "various computer data networks" (1:35-36). The Toy system then "provide[s] for . . . notification . . . whereby the information of interest is thereafter transmitted to the standard home computer terminal of the subscriber" (2:66-34).

Toy also contains each of the elements of claims 1, 46 and 64. Toy permits the user to "specify conditions" of interest such as a listing of securities to be monitored, which corresponds with element a of claims 1, 46 and 64 ("accepting from said interested parties specifications of the objects of interest"). Next, the Toy system "is amenable to use by numerous subscribers" (2:41) and the system keeps the list of users in "high speed random access electronic memory" (Fig. 2), which corresponds

United States District Court
For the Northern District of California

1    The Court has not yet construed the claims of the '175 patent. "Although the Federal Circuit

2    has stated that 'the first step in any invalidity analysis is claim construction . . .,' a court need not decide

3    the meaning of all disputed claims if the construction of the claims would have no bearing on the

4    invalidity analysis." *Univ. of Rochester v. G.D. Searle & Co.*, 249 F. Supp. 2d 216, 221 n.2 (W.D.N.Y.

5    2003), *aff'd* 358 F.3d 916, 926 (Fed. Cir. 2004); *see also SIBIA Neurosciences, Inc. v. Cadus Pharm.*

6    *Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) ("[B]ecause we decide that the claim is obvious even under

7    the district court's narrow construction of the term 'cell,' we need not decide whether the court

8    erroneously imported the 'eukaryotic' limitation into the claim, or simply interpreted the claim in light

9    of the specification."). Here, plaintiff contends that "object" should be construed as "a unit of data that

10   is available to the user from a source on the network," while defendant proposes that "object" be defined

11   as "a computer document." Joint Claim Construction Statement, Ex. A & B (Addiego Decl. Ex. C).

12   For purposes of the current motion, because defendant contends that even under plaintiff's construction

13   of "object" the '175 patent is anticipated by Toy, the Court accepts plaintiff's construction to analyze

14   defendant's anticipation argument.

15       Plaintiff contends that the Toy patent describes monitoring of information received as a

16   continuous stream of data, and that "[g]iven that an object is a unit of data that is available to the user

17   from a source on the network, there are a couple of remarkable differences between streams and objects.

18   In particular, a stream is not a unit of data, but rather a continuous flow of data. Further, the Toy patent

19   _____

20   with element b of claims 1, 46, and 64 ("maintaining in memory a list of the interested parties interested
     in each of the objects of interest"). Third, Toy discloses monitoring "thresholds" which are

21   "occurrences of change in an object of interest" that are "desirable" to each user (3:42-49), which
     matches element c ("detecting occurrence of changes in the objects of interest . . . [and] determining

22   whether an update notification would then be desirable for each interested party . . . ."). Fourth, Toy
     teaches expressly notifying the user of the "data change," (2:66-3:4), while element d similarly provides

23   that "upon determining that an update notification would then be desirable . . . notifying said one of the
     interested parties of the occurrence of change . . . ."

24       The only difference between claims 1 and 46 is that claim 46 recites a "change of significance"
     before notification. Toy's concept of "threshold" meets the definition for "change of significance."

25   Plaintiff's proposed construction of "change of significance" is "change that is significant to a user."
     Toy similarly teaches that "the user-specified conditions also may contain a list of threshold values

26   which represent specific conditions upon which the user desires to be notified of certain related pertinent
     data." (3:42-49).

27       Claim 64 is very similar to claims 1 and 46, except that it introduces the concept of "conditions
     of interest" as a replacement for "change of significance" in claim 46. Plaintiff's proposed construction

28   of "conditions of interest" is "conditions of object(s) in which users are interested." Toy teaches this
     element throughout the discussion of "threshold" (8:53-9:19).

United States District Court
For the Northern District of California

does not disclose that the stream of data is available to the user from a source on the network."

Opposition at 10:13-17.  Plaintiff relies on the following language from the Toy patent:

> In order to achieve the aforementioned objects and to overcome the shortcomings and problems associated with the prior art, the present invention provides a method and apparatus for monitoring a continuous stream of input data and notifying one or more users upon occurrence of preselected events of interest.

Toy patent at 3:22-27 (from "Brief Summary of the Invention"); *see also id.* at 5:6-8 ("However, in order to accommodate real-time analysis of a continuous stock ticker input stream 250 with respect to a multiplicity of conditions for multiple users . . . .") (from "Detailed Description of Preferred Embodiment").

Defendant argues that Toy's description of "input data" discloses the same type of data asserted by plaintiff to be an "object of interest," and that Toy's preferred embodiment discloses individual "units of data" that meet plaintiff's claim limitations.  Toy's description of the preferred embodiment states:

> The data processing system 260 accordingly may read 120 *a single reformatted transaction or data input*.  This information may contain, among other things, a ticker symbol indicative of the particular security involved, the last price of the security, the market which gave the last price, and trading volume information.  After reading 120 this data, a check 122 is performed to determine whether the security involved is one of those previously specified by a user.  If not, the data processing system 260 prepares to read 120 the next data input 121.  However, if the security is within the customer specified list of identified securities, the data processing system 260 retains the related information and determines the manner in which the data is to be utilized.

*Id.* at 8:14-27 (emphasis added).  In addition, the description of the preferred embodiment broadly states that "Input data 121 may comprise stock ticker data, securities or financial data from other sources, *or any form of information for which monitoring and notification are desired*."  *Id*. at 7:50-53 (emphasis added).  Defendant argues that there is nothing in the language of the Toy patent limiting the "input data" to a "continuous stream of data," or otherwise rendering Toy's input data different from the '175 patent's "objects of interest."  Defendant argues that the format of Toy's input data was not important, and that the breadth of Toy's input data – "stock ticker data, securities or financial data from other sources, or any form of information for which monitoring and notification are desired" – at least encompasses "a unit of data that is available to the user from a source on the network."

With regard to plaintiff's assertion that "the Toy patent does not disclose that the stream of data is available to the user from a source on the network," defendant responds that Toy does disclose that

in 1983 "stock ticker data" and "financial data from other sources" were available to users on the

network from "various information services":

> Although various information services, such as the stock ticker and, more recently various computer data networks, have long existed for distributing information pertaining to daily activities in the various financial markets, such services are of little use to the average investor who does not have the time to continuously monitor the received information.  As a result, large investors, and those who can afford the continuous monitoring services of investment brokers, have typically had an advantage in market investments.

> Various systems have been presented in an attempt to alleviate these shortcomings and provide relevant market information to users who are not able to continually monitor these data services. . . .

> There are many shortcomings with such existing systems, however.  For example, they each require some form of user interrogation or inquiry in order to initiate the market data transfer. . . . This requiring for user intervention renders such prior art systems unusable by the average investor, who does not have time to continuously interrogate systems . . . .

Toy patent at 1:34-2:13.  Defendant argues that the "ticker lines from exchanges or resellers" shown in

Figure 2 of the Toy patent are "networks" inputting data into the Toy monitoring system.  Defendant

contends that given these disclosures, it makes no sense for plaintiff to assert that one of skill in the art

would not recognize that Toy's "input data" ("stock ticker data, securities or financial data from other

sources, or any form of information for which monitoring and notification are desired") was not

available to users on the network.

The Court concludes that asserted claims 1, 46 and 64 are anticipated by the Toy patent.  As an

initial matter, plaintiff concedes and the Court finds that Toy teaches every limitation of the asserted

claims except the "objects of interest" limitation.  With regard to "objects of interest," although the Toy

patent refers to a "continuous ticker input stream," Toy does not limit the monitored data to a

"continuous stream" because it also states that Toy monitors "a single reformatted transaction or data

input."  *Id*. at 8:15.  The Court finds no meaningful distinction between Toy's "single reformatted

transaction or data input" and plaintiff's construction of "object" as "a unit of data that is available to

the user from a source on the network."   Similarly, plaintiff's broad assertion that the "objects"

monitored include "files, database records, spreadsheets, tables, charts, graphs, notes, digitized

photographs, and multimedia objects such as audio-visual presentations," Pl's Opposition at 5, is

covered by Toy's disclosure of "any form of information for which monitoring and notification are

United States District Court
For the Northern District of California

desired." Toy patent at 7:52-53.

The Court also finds unpersuasive plaintiff's assertion that Toy "does not disclose that the stream of data is available to the user from a source on the network." The Toy patent stated that the then-current systems for monitoring such data were inadequate because "the average investor . . . does not have time to continuously monitor the received information," and even the systems that did not require continual monitoring by the user "require some form of user interrogation or inquiry in order to initiate the market data transfer." *Id*. at 1:39-40, 2:4-6. Toy's solution to this problem was to "provide a method and apparatus for monitoring a continuous stream of input data and notifying one or more users upon occurrence of preselected events of interest." *Id*. at 3:24-27. Toy's description of the preferred embodiment states that "it is necessary for the user to specify which data from the stock ticker or other financial data service are to be utilized . . . ." *Id*. at 5:38-40. Thus, under Toy, the data that is monitored "is available to the user from a source on the network." Nothing in plaintiff's proposed claim construction compels a contrary conclusion.

### B.    Risch

Defendant contends that claims 53 and 55 are anticipated by Risch in U.S. Patent No. 5,471,629. Claims 53 and 55 recite a particular subset of conditions for notification: when a calculated "time-value . . . exceeds a threshold." The language of claim 53 is identical to claim 55 except for an extra clause/element found at the end of claim 55. Claim 55 provides:

> 55.  In a distributed computing system having a network of computers linked for accessing objects distributed among said computers, some of said computers executing object access software for enabling interested parties to request access to said objects, a computer-implemented method of operating at least one of said computers based on time-value of information in said objects, said computer-implemented method comprising the steps of:
>
> a) receiving from the interested parties specifications of objects of interest;
>
> b) maintaining in memory a list of the interested parties interested in the objects of interest;
>
> c) evaluating whether a time-value of each of object of interest exceeds a threshold to determine whether said each object of interest has sufficient information value to notify the interested parties interested in said each object of interest; and
>
> d) upon determining that said each object of interest has sufficient information

9

**United States District Court**
For the Northern District of California

value to notify the interested parties interested in said each object of interest, notifying the interested parties interested in said each object of interest,

[which further includes receiving from the interested parties specifications for evaluating the time-value of objects of interest to the interested parties].

'175 patent at 51:34-59 (bracketed language is the extra language contained in claim 55 that is not in claim 53).

Risch, which is titled "Method of Monitoring Changes in an Object-Oriented Database with Tuned Monitors," was filed in 1992, more than three years before the priority date of the '175 patent, and thus constitutes prior art.  Risch was considered by the PTO during the prosecution of the '175 patent.

Risch discloses a method of monitoring objects in a database system and providing notification of changes in those objects:

[T]he present invention provides a method of monitoring an object in a database in response to a request from any of a plurality of client programs.  This method, which is practiced in a computerized database system, includes keeping several records. . . .

The system thereupon determines whether a predetermined criterion respecting a monitored attribute has been satisfied and, if the criterion has been satisfied, the system notifies any client which had requested monitoring of that attribute. . . .

Addiego Decl. Ex. H (Risch patent at 5:21-40).  A user requests monitoring of an attribute of an object in the database according to any one of several possible criteria such as a change value parameter, a delay time parameter, a synchronous initiation parameter, and a "nervousness" parameter.  *Id.* (Risch patent at Abstract).  Defendant's motion focuses on the delay time parameter.  In the "Summary of the Invention," the Risch patent states:

In the case of the tracking delay time parameter, the criterion is a minimum time interval.  Whether the criterion has been satisfied is determined by determining whether the monitored attribute may have been affected by said transaction and, if so, determining whether an amount of time that exceeds the minimum time interval has elapsed subsequent to a previous event.  If the minimum time interval has elapsed, the system goes on to determine whether the value for the attribute has changed by computing an updated value for the attribute and comparing the updated value with the value in the attribute value record.  The previous event typically is a change in the value of the monitored attribute.  Thus, the client is not notified of changes more often than once in a defined interval of time.

Risch patent at 6:3-16.  Defendant contends that the Risch patent anticipates claims 53 and 55 because Risch teaches a method of monitoring an object based on predetermined criteria specified by client,

including the criterion of time-delay.

Plaintiff emphasizes the fact that the Risch patent was before the patent examiner during prosecution of the '175 patent, and thus defendant's burden to show anticipation is considerable. Plaintiff also contends that the Risch patent does not anticipate claims 53 and 55 because Risch is directed to a completely different type of network architecture than the systems used and described in the '175 patent. Specifically, plaintiff contends that the Risch patent describes a database located on a central computer that may be accessed by remote workstations or client machines, and where all of the information that is being monitored is stored on the database in the central computer. In contrast, the '175 patent discloses an invention in which objects of interest are distributed among servers located in different geographic areas and available on the Internet. Plaintiff contends that each of the asserted claims begins with the following limitation in the preamble, "In a *distributed* computing system having a network of computers linked for accessing *objects distributed among said computers* . . . ." '175 patent, claims 1, 46, 53, 55 and 64) (emphasis added). Plaintiff contends that "it is this distributed computing system that distinguishes the invention of the '175 patent from the system disclosed in the Risch patent." Opposition at 11:18-21.

Defendant raises numerous arguments in response to plaintiff's contention that the preamble limits the '175 claims such that Risch does not anticipate the asserted claims. It is unnecessary to resolve these issues, however, because the Court finds that regardless of whether Risch anticipated the asserted claims, the combination of Toy and Risch renders the asserted claims obvious.

## II.    Obviousness

Obviousness under 35 U.S.C. § 103 is a question of law, with underlying factual considerations regarding (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). A claimed invention is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (2000).

11

United States District Court
For the Northern District of California

"Although it is well settled that the ultimate determination of obviousness is a question of law, it is also well understood that there are factual issues underlying the ultimate obviousness decision." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001). Summary judgment may be appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) (citing *Graham*, 383 U.S. at 17). However, a factual dispute as to any one of these elements will defeat the motion. *See Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

The first and second *Graham* factors evaluate the scope and content of the prior art to determine any differences between the prior art and the asserted claims. Here, both Toy and Risch relate to the problem of monitoring of information and notification of changes, which is the precise field alleged in plaintiff's complaint: "[s]ome claims of the '175 patent relate to methods of communication and alerts for a variety of information that is accessed over a network." Compl. ¶ 7.

For both Toy and Risch, plaintiff only disputes that a single, different claim limitation is missing from each reference. As discussed above, the Court rejects plaintiff's attempts to distinguish Toy and concludes that Toy anticipates claims 1, 46 and 64 of the '175 patent. Toy discloses a system for monitoring "any form of information for which monitoring and notification are desired," and that such information is being received from "various computer data networks." Toy patent at 7:50-53, 1:35-36. Risch adds the time-value aspect of information monitoring found in asserted claims 53 and 55. Thus, the combination of Toy and Risch necessarily encompasses all of the asserted claim elements, and the fact that in Risch "the information being monitored is stored on the database in a central computer," Opposition at 11, does not bar a finding of obviousness.[4]

---

[4] Defendant contends that the asserted claims of the '175 patent are obvious in light of Toy, Risch, and the press clipping services dating from the 1800s. According to materials submitted by defendant, users of these services could specify various items of interest to press clipping companies, which maintained lists of subscribers and the topics of interest to those subscribers. The companies monitored news articles and, when an article was published that pertained to a user-specific topic of interest, the service sent that article to interested subscribers. The existence of the press clipping services since the 1800s supports obviousness because when "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR*,

The third *Graham* factor relates to the level of ordinary skill in the art.  Plaintiff contends that one of ordinary skill in the art would have a bachelor's degree in computer science or the equivalent, with four to five years of work experience in the software development field, consistent with the qualifications of one of the inventors of the '175 patent, Chris McMahon.  Vowell Decl. Ex. B at TK_VZ 000309 (McMahon depo. in 02-5741 SI).[5]  Based upon defendant's initial assertion in its motion that "the level of ordinary skill in the art is at least the level of one of the named inventors . . . who has a master's degree in computer science, a PhD in mathematical psychology, and approximately 20 years of work experience as of the time of the asserted priority date of the /175 patent" Motion at 22:7-10, plaintiff asserts that "there are fact issues regarding the level of ordinary skill in the art that should be considered in this analysis."  Opposition at 14:1-2.  However, in its reply defendant contends that although plaintiff disputes the level of skill in the art, plaintiff has failed to tie the dispute to any issue, and thus it is irrelevant for purposes of summary judgment.  Defendant also states that for purposes of this summary judgment motion, the Court can assume that one skilled in the art possesses the criteria cited by plaintiff.

In response to questioning by the Court at the hearing, defendant argued that because the Toy, Risch and '175 patents all involve the same field, use similar language, and perform virtually the same functions in the same steps, it would have been obvious to someone with a bachelor's degree in computer science or the equivalent, with four to five years of work experience in the software development field, to combine Toy and Risch.  Plaintiff has not raised any factual dispute on this point, and instead plaintiff's only arguments against obviousness are the same as those in opposition to anticipation, such as the argument that Toy does not monitor "objects."  The Court agrees with defendant that because Toy, Risch and the '175 patent all address the same issue within the same field – computerized methods of monitoring constantly changing data – it was well within the grasp of a person of ordinary skill in the art to combine Toy's method of monitoring data and notifying users of

---

550 U.S. at 421.

[5] Mr. McMahon holds a bachelor's degree in music education and a master's degree in computer science. *Id.*

changes with Risch's time-value aspect of monitoring. *See KSR*, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.").

In cases like this, *KSR* specifically warned against an unduly rigid or narrow approach:

> We build and create by bringing to the tangible and palpable reality around us new works based on instinct, simple logic, ordinary inferences, extraordinary ideas, and sometimes even genius.  These advances, once part of our shared knowledge, define a new threshold from which innovation starts once more. And as progress beginning from higher levels of achievement is expected in the normal course, the results of ordinary innovation are not the subject of exclusive rights under the patent laws.  Were it otherwise patents might stifle, rather than promote, the progress of useful arts. See U.S. Const., Art. I, § 8, cl. 8. These premises led to the bar on patents claiming obvious subject matter established in *Hotchkiss* and codified in § 103.  Application of the bar must not be confined within a test or formulation too constrained to serve its purpose.

*KSR*, 550 U.S. at 427.  The asserted claims of the '175 patent reflect "ordinary innovation . . . not the subject of exclusive rights under the patent laws."

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.  Docket No. 37.

**IT IS SO ORDERED.**

Dated: May 18, 2009

SUSAN ILLSTON
United States District Judge